U.S.D.C. 99-238 N
CASE No. 16-30644



U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUIS
FILED   JUN 27 2016
WILLIAM W. BLEVINS
CLERK

# United States District Court for
# the Eastern District of Louisiana

This  motion arises  pursuant to 28 U.S.C.§ 2255(f)(3) one year deadline. My application for ● permission to file a successive § 2255(h)(2) is currently pending in the Fifth Circuit Court of Appeals and  certainly will not be cleared by 6-26-2016 Johnson's deadline.

Out of an abundance of caution, see e.g. Fierro v. Cockrell, 294 F.3d 674, 680-81 (5th Cir. 2002) (filing of motion for permission in Court of Appeals does not stop one-year clock).

Mr. Joseph is filing his successive §2255(h)(2) motion in the District Court to ensure  compliance with the one-year statute of limitations of 28 U.S.C. § 2255(f)(3), which commenced on 6-26- 2015; When Johnson was decided.

This motion is timely under 28 U.S.C. § 2255(f)(3) because it is filed within  one-year of June 26 , 2015. The date on which  the right asserted was initially recognized by the Supreme Court in Johnson. That right has been newly recognized by the Supreme Court and made retroactively appealable  to cases on collateral review.

Thank you kindly....

Mr. Sidney Joseph 27429-034
United States Penitentiary
P.O.Box  2099
Pollock, La 71467

____ Fee ____
____ Process ____
_X_ Dktd ____
____ CtRmDep ____
____ Doc. No. ____

TENDERED FOR
JUN 27 2016
U.S DISTRICT COURT
Eastern District of

## Certificate of Service

I certify that on ___4·22·2016___, I mailed this motion to the U.S. Attorney's office addressed to John F. Murphy.

Mr. Sidney Joseph 27429-034
United States Penitentiary
P.O.B. 2099
Pollock, La 71467

**United States District Court for**
**the Eastern District of Louisiana**

Sidney Joseph
Pro-se Petitioner,

TENDERED FOR FILING
Case No.16-30664

JUN 2 7 2016

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

v.

United States of America,

**Memorandum in Support of Successive 28 U.S.C. § 2255**
**Defendant's Motion to Dismiss Counts**
**2, 5, and 9**

Comes now Sidney Joseph whom hereby moves this Honorable Court, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B)(v) and (b)(1) to dismiss count's 2, 5, and 9 (alleged violations of 18 U.S.C. § 924 (c) for failure to state a claim.

As will be explained herein, the federal bank offense(s) counts 1, 4, and 8 under lying the § 924 (c) offense(s) counts 2, 5, and 9 categorically fails to qualify as a crime of violence within the § meaning of 18 U.S.C. § 924 (c)(3)(A) and the residual clause of 924(c)(3)(B) is unconstitutionally vague under Johnson v United States,_U.S._,135 S.Ct.2551(2015). Therefore , counts 2, 5, and 9 does not state an offense and must be dismissed.

**INTRODUCTION**

Counts 2, 5, and 9 of the current superseding indictment charges petitioner with brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Specifically , the counts allege that the underlying " crime of violence " for the 924(c) is federal bank robbery in violation of § 2113 (a) and (d). However, the Government cannot prove this charge because the offense of federal bank robbery categorically fails to qualify as a " crime of violence."

As explained herein, the Supreme Courts recent precedent in Johnson renders the Government's task unachievable. Under the current law of land, bank robbery as prescribed by 18 U.S.C. § 2113 (a) and (d) categorically fails to constitute a crime of violence under 924(c)(3)(A) (the force clause) because it can be accomplished by "intimidation," which 1) does not require a threat of violent physical

1

"residual clause" within § 924(c)(3)(B), is unconstitutionally vague and cannot sustain a conviction.

Therefore, counts 2, 5, and 9, of the superseding indictment must be dismissed.

## STATUTES INVOLVED

This motion primarily concerns the following two federal statutes:

1) 18 U.S.C. § 2113 (a) and (d)
Section 2113 (a) and (d) in pertinent part, provides:
Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another an property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or and loan association...shall be [punished in accordance with the remainder of the statute].

2) 18 U.S.C. § 924(c)
Section 924 (c)(1)(A), in pertinent part, provides:
any person who, during and in relation to a crime of violence...for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall in addition to the punishment provided for such crime of violence.....

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Under § 924 (c)(3), " crime of violence " is defined as follows:

(3) For purposes of this subsection the term " crime of violence " means an offense that is a felony and

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

## ARGUMENT

The Court must dismiss counts 2, 5, AND 9, the alleged § 924 (c) violations, because the

predicate bank robbery offense as defined by § 2113 (a) and (d) does not qualify as a "crime of

violence" as a matter of law. As noted in the prior section, the relevant portion of § 924 (c) defining a

" crime of violence " has two clauses. The first clause 924(c)(3)(A) is commonly referred to as the "

force " clause. The other 924(c)(B) is commonly referred to as the  " residual " clause. As discussed in

the next sections, bank robbery under § 2113(a) and (d) categorically fails to qualify as a " crime of

violence " under 924 (c)(3)'s force clause since pursuant to 2113, the offense can be committed through

" intimidation," and § 924(c)(3)'s residual clause, post-Johnson, is constitutionally incapable of

2

supporting a conviction due to vagueness. Therefore, counts 2, 5, and 9 of the superseding indictment must be dismissed. **(pg.3)**

**1.Federal Bank robbery Under § 2113(a) and (d) does not qualify as a " crime of violence " under the force clause of § 924(c)(3) because it can be violated by intimidation. Which does not require 1) The use, attempted use, or threatened use of violent physical force or 2) an intentional threat of the same.**

To determine whether a predicate offense qualifies as a " crime of violence " under § 924(c), courts use the categorical approach. See Descamps v. United States,133 S.Ct. 2276, 2283 (2013); United States v. Royal, 731 F.3d 1105, 1107-08 (10th Cir. 2009); United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006). This approach requires that courts " look only to the statutory definitions i.e., the elements of a defendants [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a " crime of violence. " Descamps, 133 S.Ct. at 2283 (citation omitted); Royal, 731 F.3d at 341-42; Serafin, 562 F.3d at 1107; Acosta, 470 F.3d at 135. In addition, under the categorical approach, a prior offense can only qualify as a " crime of violence " if all of the criminal conduct covered by a statute " including the most innocent conduct " matches or is narrower than the " crime of violence " definition. United States v. Torres-Miguel, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a " crime of violence, " then the statute categorically fails to qualify as a " crime of violence. "

As a result, post-Descamps, it is clear that for federal bank robbery under § 2113 (a) and (d) to qualify as a " crime of violence " under § 924 (c)(3)'s force clause the offense must have an element of " physical force. " And " physical force " means "violent force" that is "strong physical force," which is " capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010) (emphasis in original). Federal bank robbery, as defined by § 2113 (a) and (d), does not meet this requirement because it can be accomplished **(pg.4)** by "intimidation," which does not require the use , attempted use, or threatened use of " violent force." Additionally, because "intimidation" under the federal bank robbery statute can be accomplished without an intentional threat of physical force, it fails to satisfy the intentional mens rea required under § 924(c)(3)(B) force clause.

3

**A. Intimidation Does Not Equal the Use, Attempted, Use or Threatened Use of "Violent Force."**

To begin with, it is well settled that that " intimidation" under the federal bank robbery statute only occurs when " an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts." United States v. Woodrop, 86 F.3d 359, 364 (4th Cir. 1996) (emphasis added); see also United States v. Pickar, 616 F.2d 821, 825 (2010)(same); United States v. Kelly, 412 F.3d 1240, 1241 (2005) (same); United States v. Yockel, 320 F.3d 818, 824 (8th Cir. 2003) (same); United States v Higdon, 832 F.3d 312, 315 (5th Cir.1987)(same). Applying this intimidation definition here, even assuming that the act of placing another in fear of bodily harm constitutes a threat of physical injury, it still fails to qualify as a " crime of violence " under the § 924 (c)(3)(A) force clause it does not require the use or threatened use of " violent force " against another. The Fourth Circuits decision in Torres- Miguel, 701 F.3d 165, is directly on point. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death, " does not necessarily require the use of physical force let alone " violent force. "

In  Torres-Miguel, at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which " will result in death or great bodily injury to another." 701 F.3d at 168 (citing Cal. Penal Code 422 (a))( emphasis added). The specific question in the case was whether the statute had an element equating to a threat of " violent force " under the force clause of U.S.S.G. 2L1.2 a clause  that is identical in all relevant     **(pg.5)**     respects to the 924 (c)(3)(A)'s force clause.Id. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause.Id. at 168-69. The Court blanketly held that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of "crime of violence."Id. at 168. The Court, in strong words, proclaimed that " of course, a crime may result in death or serious injury without involving use of physical force."Id. (emphasis added).

The Court, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury even death can result without use of "violent force."Id. at 168-69."

4

For example, as the Fifth Circuit has noted, a defendant can violate statutes like 422(a) by threatening to poison another, which involves no use or threatened use of force." Torres-Miguel,701 F.3d at 168-69 (citing United States v. Cruz-Rodriguez, 625 F.3d 274,276 (5th Cir.2010).

In reaching its decision, the Torres-Miguel Court also relied on the Second Circuits decision in Chrzanoski v. Ashcroft, 327 F.3d 188,194 (2nd Cir.2003). In that case at issue was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury. " Chrzanoski, 327 F.3d at 193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute a crime of violence because there is a difference between causation of an injury, which is all that the Connecticut statute []

required, and an injury(s) causation by the use of physical force." Torres-Miguel, 701 F.3d at 169 citing Chrzanoski, 327 F.3d at 194) (internal quotation marks omitted).      **(pg.6)**

The Second Circuit explained that " an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission."327 F.3d at 195. The Court elaborated that " human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victims drink.Id. at 195-56. For even further support, in Torres-Miguel, 701, F.3d at 169, the Fourth Circuit embraced the Tenth Circuit's decision in United States v. Perez-Vargas, 414 F.3d 1282,1287 (10th Cir.2005). In that case, the Tenth Circuit" explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury [by means of a deadly weapon], imposing that injury does not necessarily include the use or threatened use of physical force as required by the guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. 2L1.2 "Torres-Miguel, 701 F.3d at 169 (citing Perez-Vargas, 414 F,3d at 1287) (internal quotation marks omitted). The tenth Circuit reasoned that " several examples [exist] of third degree assault that would not use or threaten the use of physical force:...intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." Perez-Vargas,

414F.3d at 1286.Therefore, Torres-Miguel and all the other cases discussed above command that federal bank robbery, which can be accomplished by putting another in fear of bodily harm, does not require "violent force." If threat of serious bodily injury or death do not equal violent force, then certainly, threat of "bodily harm" does not. Indeed, a defendant can place another in fear of bodily harm by threatening to poison that person, to release hazardous chemicals on that person, or to lock that person up in a room without food or water are some of the very examples that the **(pg.7)** Fourth Circuit in Torres-Miguel as well as the other Courts mentioned above held do not constitute "violent force."

Because "the full range of conduct" covered by the bank robbery statute does not require "violent force." it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. Torres-Miguel, 701 F.3d at 171. And it makes no difference, even if the possibility of violating the bank robbery statute without the use of or threat of violent physical force is slim. Because the possibility exists, this Court cannot legally find that bank robbery is a "crime of violence." Indeed, in Torres-Miguel, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other nonviolent force; yet the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence."Id. at 171. The Court should find the same here with respect to the federal bank robbery statute, which leaves open the same possibility.

### B. INTIMIDATION DOES NOT REQUIRE AN INTENTIONAL THREAT OF VIOLENT FORCENECESSARY UNDER THE 924(C)(3)(A)'s FORCE CLAUSE

Even more, "intimidation" as defined under the bank robbery statute does not constitute a "crime of violence" under the force clause because it does not require an intentional threat of physical force. In Garcia v. Gonzales, 455 F.3d 465,468 (4th Cir. 2006), the Fourth Circuit firmly held that an offense can only constitute a "crime of violence" under the force clause if it has an element that requires an "intentional employment of physical force [or threat of physical force].Id.(emphasis added).

6

It is well settled that the "intimidation" element of federal bank robbery is missing this

necessary intentional mens rea." Intimidation is satisfied under the bank robbery statute **(pg.8)**

whether or not the defendant actually intended the intimidation," an ordinary person in the [victims]

position reasonably could infer a threat of bodily harm from the defendant's acts. " Woodrup, 86 F.3d

at 36. See also United States v. Yockel,320 F.3d 818, 821(8th Cir.203 (upholding bank robbery

conviction even though there was no evidence that defendant intended to put teller in fear of injury:

defendant did not make any sort of physical movement toward the teller and never presented her with a

note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by

all accounts, did not appear to possess a weapon); United States v. Kelley, 412 F.3d 1240, 1244 (11th

cir.2005)("Whether a particular act constitutes intimidation is viewed objectively,..and a defendant can

be convicted under [federal bank robbery]even if he did not intend for an act to be intimidating.");

United States v. Foppe, 993 F.2d 1444,1451(9th Cir.1993)(same). In other words, a defendant may be

found guilty of  federal bank robbery even though he did not intend to put another in fear of injury. It is

enough that the victim reasonably fears injury from the defendant's actions whether or not the

defendant actually intended to create that fear. Due to the lack of this intent, federal bank robbery

criminalizes conduct that does not require an intentional threat of physical force. Therefore, bank

robbery squarely fails to qualify as a "crime of violence" under Garcia. In sum, federal bank robbery

fails to qualify as a "crime of violence" under the § 924(c)(3)(A) force clause for two independent

reasons. First, the statute does not require a threat of violent force. Second, the statute does not require

the intentional threat of violent force. **(pg.9)**

## II.SECTION 924(c)(3)(A)'s RESIDUAL CLAUSE IS CONSTITUTIONALLY VAGUE AND THUS, CANNOT SUPPORT A CONVICTION UNDER THE STATUTE.

Since bank robbery fails to qualify as a "crime of violence" under §  924(c)(3)'s force clause,

the remaining question is whether the offense can qualify as a "crime of violence" under § 924(c)(3)'s

residual  clause. It cannot under Johnson. In Johnson, the Supreme Court decided ACCA's "residual

clause" is unconstitutionally vague, but the decision equally applies to the parallel "crime of violence"

definition in § 924(c)(3)'s residual clause. Section 924(c)(3)(B) suffers from the same flaws that

compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using §

924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due

process.

## A. JOHNSON EXPRESSLY OVERRULED THE "ORDINARY CASE" APPROACH TO DETERMINING WHETHER A FELONY QUALIFIES AS A "CRIME OF VIOLENCE"

In Johnson, the Supreme Court held that the ACCA residual clause is unconstitutionally vague

because the process by which courts categorize prior convictions as violent felonies is too "wide-

ranging" and " indeterminate." 135 S.Ct. at 2557. As a result, the ACCA " both denies fair notice to

defendants and invites arbitrary enforcement by judges."Id. Johnson concluded that the Supreme

Courts four previous attempts to articulate a workable test to determine whether a felony falls under

the ACCA residual clause had failed.Id. at 2558-59. The Court began its analysis by explaining that,

under Taylor v, United States, 495 U.S. 575 (1990), the ACCA requires the categorical approach to

determine whether a particular statute qualifies as a violent felony.1 Id. at 2557. Courts must assess

whether a crime qualifies as a violent felony "in terms of how the law defines the offense. The Court

reaffirmed vitality of the categorical approach, despite the governments and a dissenting justices

invitation to abandon it in residual clause cases .Id. at 2557,2562.     **(pg.10)** individual might have

committed it on a particular occasion."Id. (quoting Begay v. United States, 553 U.S. 137,141 (2008)).

The Court further clarified that the residual clause " requires a court to picture the kind of conduct that

the ordinary case, and to judge whether that abstraction presents a serious risk of potential injury."Id.

(citation omitted). The Court linked the ordinary case framework to James v. United States, 550 U.S.

192 (2007), in which it held, " We do not view that approach as requiring that every conceivable

factual offense covered by a statute must necessarily present a serious potential risk of injury before

the offense can be deemed a violent felony...Rather, the proper inquiry is whether the conduct

encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of

injury to another."Id. at 208(citations omitted)." As long as the offense is of a type that, buy it's nature,

presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual

clause.Id. at 209 (emphasis added, brackets supplied).

8

Johnson concluded that the process of determining what is embodied in the " ordinary case " rather than "real-world facts" is fatally flawed, rendering the ACCA unconstitutionally vague. " Grave uncertainty " surround the method of determin[ing] the risk posed by the " judicially imagined ordinary case." 135 S.Ct. at 2557. " The residual clause offers no reliable way to choose between...compelling accounts of what ordinary...involves. "Id. at 2558(emphasis added).

The Johnson Court considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." Id. at 2557 (quoting United States **(pg.11)** v. Mayer, 560 F,3d 948,952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)). Although earlier ACCA cases tried to rely on statistical analysis and common sense, " Johnson concluded that these methods " failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition. Id. at 2559 (referring to Chambers v. United States, 555 U.S.122 (2009), and Sykes v. United States, 564 U.S. 1 (2011). This flaw alone establishes the residual clause's unconstitutional vagueness. The Court, however, explained that a closely related flaw exacerbates the problem. The Court noted that the residual clause lacks a meaningful gauge for determining when the quantum of risk under the " ordinary case of a particular statute is enough to constitute a "serious potential risk of physical injury."Id. at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), Johnson rejected the notion that comparing a felony's " ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem.Id.

The enumerated offenses failed to save the ACCA residual clause because, according to the majority, comparing felonies to enumerated offenses similarly requires resorting to "a judicially imagined abstraction."Id. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, Johnson emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses."Id. (quoting Begay

v. United States, 553 U.S. 137,143(2008). Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that such indeterminacy, unpredictability, and **(pg.12)** arbitrariness inherent in the "ordinary case" analysis is more than the " Due Process Clause tolerates." Id.

Thus, Johnson not only invalidate the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In others words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case analysis is impossible to apply in a constitutional manner.

### B. Johnson Means That § 924 (c)(3)(B) Is Unconstitutionally Vague.

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.

2. To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and  § 924(c)(3)(B) are not identical. But the difference have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in Section 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on  Johnson

Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here. (Although the comparison tends to specifically address 18 U.S.C. 16(b), that statute is identical to 924 (c)(3)(B).) See,e.g., Chambers,555 U.S. at 13,n.2(2009)(citing circuit splits on 16(b) in context of a residual clause case because 16 (b) " closely resembles ACCA's residual clause")(Alito,J.,concurring).See United States v. Ayala, 601 F.3d 256,267(4th Cir.2010)(relying on an ACCA case to interpret the definition of a crime of violence under 924(c)(3)(B); United States v. Aragon, 983 F.2d 1306,1314(4th Cir.1993)(same). See also United States v. Keelan, 786 F.3d 865,871 n.7(11th Cir.2015)(describing the ACCA otherwise clause and 16 (b) "analogous"); Roberts v. Holder, 745 F.3d 928,930-31 (8th Cir.2014)(using both ACCA cases and 16 (b) cases to define the same "ordinary case" analysis); United States v. Sanchez-Espinal, 762 F.3d 425, 432( 5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and §16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

**3.** In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that by its nature, involves a substantial risk that physical force against another person of property of another may be used in the course of committing the offense." **(pg.13)** The Court 's holding did not on 4 type of risk, but rather how a court assesses and quantifies the risk. That inquiry is the same under both the ACCA and § 924(c). Both statutes require courts first to picture the "ordinary case" embodied by a felony, then decided if it qualifies as a crime of violence by assessing the risk posed by the "ordinary case."

Relying on James, the Fourth circuit has squarely held that the 'ordinary case" analysis applies when construing 18 U.S.C. § 16(b). United States v. Avila, 770 F.3d 1100, 1107(4th Cir2014). The Fourth Circuit stated:

[E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as crime of violence. It is sufficient if the conduct encompassed by the elements of the offense, ." See Jimenez-Gonzales v. Mukasey, 548 F.3d 557,562 (7th Cir. 2008)(noting that, "[d}espite the slightly different definitions," the Supreme Court's respective analysis of the ACCA and § 16(b) "perfectly mirrored" each other). See also United States v. Gomez-Leon, 545 F.3d 777 (9th Cir.2008); United States v. Coronado-Cervantes, 154 F.3d 1242, 1244(10th Cir.1998); United States v. Kirk, 111 F.3d 390, 394(5th Cir.1997); United States v. Bauer, 990 F.2d 373,374 (8th Cir.1993)(describing the differences between the statutes as "immaterial and that interpreting U.S.S.G. 4.1.1, which uses the ACCA language, " is controlled by" a decision that interprets § 16(b)).

Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in Johnson said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and § 924(c)(3)'s too, require it to be applied to "an idealized ordinary case of the crime, "an "abstract

inquiry" that "offers significantly less predictability." Johnson, 135 S.Ct.at 2558. ; Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by examining the elements using a categorical approach. See, e.g., United States v. Butler, 496 Fed.Appx. 158,161n.4 (3d Cir. 2012);Evans v. Zych, 644 F.3d 447,453(6th Cir.2011);United States v. Green, 521 F.3d 929,932 (8th Cir.2008);United States v. Acosta, 470 F.3d 132,134(2d Cir.2006). United States v. Amparo, 68 F.3d 1222,1225(th Cir.1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case" regardless of whether the ACCA, § 924(c)(3)(B) or § 16(b) is at issue. **(pg.14)**

' James, 550 U.S.at 208, 127 S.Ct 1586. As long as offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).Id.

Avila controls here because § 16(b) and § 924(c)(3)(B) are identical. Indeed, in litigating Johnson, the government, through the Solicitor General, agreed that the phrases at  issue in Johnson and here pose the same problem. In noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the judgment about the risk of confrontation and other violent encounters. Johnson v. United States, S.Ct. no. 13-7120, Supplemental brief of respondent United States at 22-23(available at 2015 WL 1284964 at *22-*23). The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This court should hold the government to that concession.

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. Avila,770 F.3d at 1107; Ayala, 601 F.3d at 267; Van Don Nguyen, 571 F.3d at 530; Sanchez-Garcia,501 F.3d at 1213. Since this is the identical analytical step that brought down the ACCA other court likewise require the ordinary case analysis when the statutory language of § 16(b)(and thus §  924(c)(3)(B) is at issue. See,

e.g., Keelan, 786 F.3d at 871 (relied on by the government in its Rule 28(j) letter and following the "uniform rule" of all other circuits to have examined the issue and adopting "ordinary case" analysis for 16(b));United States v. Ramos-Medina, 706 F.3d 932,938(9th Cir.2012)(citing James as the source of the "ordinary case" analysis required by 16(b));Van Don Nguyen v. Holder, 571 F.3d 524,530 (6th Cir.2009)(considering 16(b) and concluding that '[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute.');United States v. Sanchez-Garcia, 501 F.3d 1208, 1213(10th Cir.2007)(same).

Residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in Johnson. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

## CONCLUSION

Since a bank robbery under § 2113(a) and (d) categorically fails to qualify as a "crime of violence" under § 924(c)'s "force" clause, and § 924(c)'s residual clause is unconstitutionally vague, no legal basis exists for a § 924(c) conviction.

For the foregoing reasons, Mr. Joseph, petitioner, respectfully requests that the Court grant this motion and dismiss counts 2, 5, and 9 of the superseding indictment.

## DEFENDANT'S MOTION TO DISMISS COUNT 9

As will be explained herein , the carjacking offense (count 7) underlying the § 924 (c) offense/count 9 categorically fails to qualify as a crime of violence within the meaning of 18 U.S.C. § 924(c)(3)(A), and the residual clause of § 924(c)(3)(B) is unconstitutionally vague under Johnson v. United States, _U.S._,135 S.Ct. 2551 (2015). Therefore, Count 9 does not state an offense and must be dismissed.

## INTRODUCTION

Count 9 of the superseding indictment currently charges Mr. Joseph with brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924 (c). Specifically, the Count

alleges that the underlying "crime of violence" for the § 924(c) is "Carjacking" in violation of 18 U.S.C. § 2119. However, the Government cannot prove this charge because "carjacking" categorically fails to qualify as a "crime of violence." As explained herein, the Supreme Court's recent precedent in Johnson renders the Government's task unachievable. Under the current law of land, carjacking as prescribed by 18 U.S.C. § 2119 categorically fails to constitute a crime of violence under § 924(c)(3)(A) (the force clause) because it can be accomplished by "intimidation, "which does not require violent physical force. Additionally, in light of Johnson, the "residual clause" within § 924(c)(3)(B), is unconstitutionally vague and cannot sustain a conviction. Therefore, Count 9 of the superseding indictment must be dismissed.

### STATUTES INVOLVED
This motion primarily concerns the following two federal statute:
1) 18 U.S.C. § 2119
Section 2119, in pertinent part, provides:
Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall [be punished in accordance with the remainder of the statute]
2)18 U.S.C. § 924(c)
Section (c)(1)(A), in pertinent part, provides:
...any person who, during and in relation to a crime of violence...for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence......
i)be sentenced to a term of imprisonment of not less than 5 years;
ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
ii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.      (Pg.2)
Under § 924(c)(3) "crime of violence" is defined as follows:
3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and
A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

### ARGUMENT

The Court must dismiss Count 9, the alleged § 924(c) violation, because the predicate carjacking offense as defined by § 2119 does not qualify as a "crime of violence" as a matter of law.

As noted in the prior section, the relevant portion of § 924 (c) defining a "crime of violence" has two clauses. The first clause § 924(c)(3)(A) is commonly referred to as the "force" clause. The other § 924(c)(3)(B) is commonly referred to as the "residual" clause. As discussed in the next sections, carjacking under § 2119 categorically fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause since pursuant to § 2119, the offense can be committed through "intimidation" and not violent physical force, and § 924 (c)(3)'s residual clause, post-Johnson, is constitutionally incapable of supporting a conviction due to vagueness. Therefore, count 9 of the superseding indictment must be dismissed.

### I. CARJACKING UNDER § 2119 DOES NOT QUALIFY AS A "CRIME OF VIOLENCE" UNDER THE FORCE CLAUSE OF 924 (c)(3) BECAUSE IT CAN BE VIOLATED WITHOUT THE USE, ATTEMPTED USE, OR THREATENED USE OF VIOLENT PHYSICAL FORCE.                (pg.3)

To determine whether a predicate offense qualifies as a "crime of violence" under 924 (c), courts use the categorical approach. See Descamps v. United States, 133 S.Ct. 2276,2283(2013); United States v. royal, 731 F.3d 333, 341-42(4th Cir.2014); See also United States v. Serafin, 562 F.3d 1105,1107-08(10th Cir.2009); United States v. Acosta, 470 F.3d 132,135(2nd Cir.2006). This approach requires that courts " look only to statutory definitions i.e., the elements of a defendant's [offense] and not to the particular facts underlying [the offense] in determining whether the offense qualifies as a "crime of violence." Descamps, 133S.Ct. at 283 (citation omitted); Royal, 731 f.3d at 341-42; Serafin, 562 F.3d 1107; Acosta, 470 F.3d at 135. In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute " including the most innocent conduct " matches or is narrower than the "crime of violence" definition. United States v. Torres-Miguel, 701 F.3d 165,167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

As a result, post-Descamps, it is clear that for carjacking under § 2119 to qualify as a "crime of violence" under § 924(c)(3)'s force clause the offense must have an element of " physical force." And "physical force" means "violent force" that is "strong physical force," which is "capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140

(2010)(emphasis in original). Carjacking as defined by 2119, does not meet this requirement because it can be accomplished by "intimidation," which does not require the use, attempted use, or threatened use of "violent force."

As defined Merriam-Webster, "intimidation is "to make timid or fearful; to compel or deter by as if threats." See http://www.merriam-webster.com/dictionary/intimidation. Moreover, federal cases interpreting the federal bank robbery statute (18 U.S.C. § 2113(a)and (d) which has an identical intimidation element are also instructive here. These cases

(pg.4)  uniformly hold that intimidation occurs when "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts." United States v. Woodrop, 86 F.3d 359,364(4th Cir.1996)(emphasis added);see also United States v. Pickar, 616 F.2d 821,825 (2010))(same);United States v. Kelley, 421 F.3d 1240,1241 (2005)(same);United States v. Yockel , 320 F.3d 818, 824 (8th Cir. 2003)(same); United States v. Higdon, 832 F.3d 312,315 (5th Cir. 1987)(same). No reason exists why this same definition of "intimidation" should not apply here. In fact, Modern Federal Jury Instruction 53A-5 uses this very definition upon noting that "this instruction is adapted from the bank robbery statute, 18 U.S.C.§ 2113, which uses the same phrase in an analogous situation." Modern Federal Jury Instructions, Sand, Siffert, Loughlin, Reiss, Allen, and Rakoff(2014).

Applying this intimidation definition here, the act of placing another in fear of bodily harm, at best, constitutes a threat of physical injury to another, which plainly does not require the use or threatened use of "violent force" against another. The Fourth Circuit's decision in Torres-Miguel, 701 F.3d 165, is directly on point. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death," does not necessarily require the use of physical force let alone "violent force."

In Torres-Miguel, at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or great bodily injury to another." 701 F.3d at 168(citing Cal.Penal Code 422(a))(emphasis added). The specific question of the case was whether the statute had an element equating to a threat of "violent force" under the force clause of U.S.S.G. § 2L1.2 a clause that is identical in all relevant respects to the § 924(c)(3)(A)) force

16

clause.Id. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent ( pg.5) force" element, and thus, could never qualify as a "crime of violence" under the force clause.Id. at 168-69. The Court blanketly held that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the guidelines definition of "crime of violence."Id. at 168. The Court, in strong words, proclaimed that "of course, a crime may result in death or serious injury without involving use of physical force."Id.(emphasis added). The Court, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury even death can result without use of "violent force".Id.at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statute like 422(a) by threatening to poison another, which involves no use or threatened use of force." Torres-Miguel, 701 F.3d at 168-69(citing United States v. Cruz-Rodriguez, 625 F.3d 274,276 (5th Cir.2010)). In reaching its decision, the Torres-Miguel Court also relied on the Second Circuit's decision in Chrzanoski v. Ashcroft, 327 F3.d 188, 194 (2nd Cir. 2003). In that case at issue was whether a prior Connecticut conviction for third degree assault qualified as a " crime of violence" under the force clause. The Connecticut Statute "require[s] the state to prove that the defendant had intentionally caused physical injury." Chrzanoski, 327 F.3d at 193. Nonetheless, the "Second Circuit[] held that [the statute] does not constitute a crime of violence...because there is a difference between causation of an injury, which is all that the Connecticut statute[] required, and an injury's causation by the use of "physical force." Torres-Miguel, 701 F.3d at 169 (citing Chrzanoski, 327 F.3d at 194)(internal quotation marks omitted).

     The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or ( pg.6 ) even deliberate omission." 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing injury without the use of force, such as a doctor who deliberately without vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. Id. at 195-96. For even further support, in Torres-Miguel, 701 F.3d at 169, the Fourth Court embraced the Tenth Circuit's decision in United States v.

Perez-Vargas, 414 F.3d 1282,1287(10th Cir.2005). In the case, the Tenth Circuit" explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury, imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2. " Torres-Miguel, 701 F.3d at 169 (citing Perez-Vargas, 414 F.3d at 1287)(internal quotation marks omitted). The tenth Circuit reasoned that " several examples [exist] of third degree assault that would not use or threatened use of physical force:...intentionally placing a barrier in front of a car causing an accident, or intentionally exposing to hazardous chemicals." Perez-Vargas, 414 F.3d at 1286.

Therefore, Torres-Miguel and all the other cases discussed above command that carjacking, which can be accomplished by putting another in fear of bodily harm, does not require " violent force." If threat of serious bodily injury or death do not equal violent force, then certainly, "bodily harm" does not. Indeed, a defendant can place another in fear of bodily harm by threatening to poison that person if he does not turn over his car to the defendant, to release hazardous chemicals into the car, to place a barrier in front of the car if the person attempts to drive off, or to lock the person up in the car on a hot day some of the very examples that the  ( pg.7 )  Fourth Circuit in Torres-Miguel as well as the other Courts mentioned above held do not constitute " violent force."

Because " the full range of conduct" covered by the carjacking statute does not require violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. Torres-Miguel, 701 F.3d at 171. And it makes no difference, even if the possibility of violating the carjacking statute without violent physical force is slim. Because the possibility exists, this Court cannot legally find that carjacking is a "crime of violence." Indeed, in Torres-Miguel, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence."Id at 171. The

Court should find the same here with respect to the carjacking statute, which leaves open the same possibility.

## II. SECTION 924(c)(3)'s RESIDUAL CLAUSE IS UNCONSTITUTIONALLY VAGUE AND THUS CANNOT SUPPORT A CONVICTION UNDER THE STATUTE.

Since carjacking fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause, the remaining question is whether, the offense can qualify as a "crime of violence under § 924(c)(3)'s residual clause. It cannot under Johnson. In Johnson, the Supreme Court decided ACCA's "residual clause" is unconstitutionally vague. Johnson applies to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause. Section 924(c)(3)(B) suffers from the same flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due process. (pg.8)

## A. JOHNSON EXPRESSLY OVERRULED THE "ORDINARY CASE" APPROACH TO DETERMINING WHETHER A FELONY QUALIFIES AS A "CRIME OF VIOLENCE"

In Johnson, the Supreme Court held that the ACCA residual clause is unconstitutionally vague because the process by which courts categorize prior convictions as violent felonies is too "wide-ranging" and " indeterminate." 135 S.Ct. at 2557. As a result, the ACCA " both denies fair notice to defendants and invites arbitrary enforcement by judges."Id. Johnson concluded that the Supreme Courts four previous attempts to articulate a workable test to determine whether a felony falls under the ACCA residual clause had failed.Id. at 2558-59. The Court began its analysis by explaining that, under Taylor v, United States, 495 U.S. 575 (1990), the ACCA requires the categorical approach to determine whether a particular statute qualifies as a violent felony.1 Id. at 2557. Courts must assess whether a crime qualifies as a violent felony "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." Id.(quoting Begay v United States, 553 F.3d U.S. 137,141(2008)).

The Court further clarified that the residual clause "requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents a serious risk of potential injury."Id.(citation omitted). The Court linked the "ordinary case framework to James v. United States,  1 The Court reaffirmed vitality of the categorical approach, despite the governments and a dissenting justices invitation to abandon it in residual clause cases .Id. at 2557,2562.    (pg.9) .(citations omitted)."As long as the offense is of a type that, by its nature, presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual clause."Id.at 209(emphasis added, brackets supplied).

Johnson concluded that the process of determining what is embodied in the "ordinary case" rather than "real- world facts" is fatally flawed, rendering the ACCA unconstitutionally vague . "Grave uncertainty" surrounds the method of " determin[ing] the risk posed by the "judicially imagined ordinary case." 135 S.Ct.at 2557. The residual clause offers no reliable way to choose between...competing accounts of what ordinary...involves."Id.at 2558(emphasis added).

The Johnson Court considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case."Id. at 2557(quoting United States v. Mayer, 560 F.3d 948, 952(9th Cir.2009)(Kozinski, J., dissenting from denial of rehearing en banc)). Although earlier ACCA cases tried to rely on statistical analysis and "common sense," Johnson concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition."Id.at 2559(referring to Chambers v. United States, 555 U.S. 122 (2009), and Sykes v. United States, 564 U.S. 1(2011)).

This flaw alone established the residual clause's unconstitutional vagueness. The Court, however, explained that a closely related flaw exacerbates the problem. The Court noted that the

residual clause lacks a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a particular statute is enough to constitute a serious potential risk of physical (pg.10) injury."Id.at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses(burglary, arson, extortion, or crimes involving use of explosives), Johnson rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem .Id.

The enumerated offenses failed to save the ACCA residual clause because, according the majority, comparing felonies to enumerated offense similarly requires resorting to "a judicially imagined abstraction."Id. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, Johnson emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses."Id.(quoting Begay v. United States, 553 U.S. 137, 143(2008). Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case analysis is more than the "Due Process Clause tolerates."Id.

Thus, Johnson not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

**B. JOHNSON MEANS THAT § 924(c)(3)(B) IS UNCONSTITUTIONALLY VAGUE.**

The statute phrase at issue in this case is essentially the same as the ACCA residual clause.

To be sure, 18 U.S.C. § 924 (e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical. Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here.(Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical

to § 924(c)(3)(B).) See, e.g., Chambers, 555 U.S. at 133, n.2(2009)(citing circuit splits on 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's      (pg11)      but the differences have no impact on constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in Section 924(c) is a risk that force will be used , this difference is immaterial to the due process problem and has no impact on the Johnson decision. The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk. That inquiry is the same under both the ACCA and § 924(c). Both ("residual clause") (Alito, J.,concuring). See United States v. Ayala, 601 F.3d 256,267(4th Cir.2010)(relying on an ACCA case to interpret the definition of crime of violence under 924(c)(3)(B)); United States v. Aragon, 983 F.2d 1306, 1314 (4th Cir.1993)(same). See also United States v. Keelan, 786 F.3d 865, 871 n.7(11th Cir.2015)(describing the ACCA otherwise clause and 16(b) "analogous"); Roberts v. Holder, 745 F.3d 928,930-31(8th Cir.2014)(using both ACCA cases and 16(b) cases to define the same "ordinary case" analysis); United States v. Sanchez-Espinal, 762 F.3d 425,432(5th Cir.2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

   **3**. In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that " by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." See Jimenez-Gonzales v. Mukasey, 548 F.3d 557,562 (7th Cir. 2008)(noting that, "[d}espite the slightly different definitions," the Supreme Court's respective analysis of the ACCA and 16(b) "perfectly mirrored" each other). See also United States v. Gomez-Leon, 545 F.3d 777 (9th Cir.2008); United States v. Coronado-Cervantes, 154 F.3d 1242, 1244(10th Cir.1998); United States v. Kirk, 111 F.3d 390, 394(5th Cir.1997); United States v. Bauer, 990 F.2d 373,374 (8th

Cir.1993)(describing the differences between the statutes as "immaterial and that interpreting U.S.S.G. § 4.1.1, which uses the ACCA language, " is controlled by" a decision that interprets 16(b)). Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in Johnson said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and § 924(c)(3)'s too, require it to be applied to "an idealized ordinary case of the crime, "an "abstract inquiry" that "offers significantly less predictability." Johnson, 135 S.Ct.at 2558.    (pg.12) Statutes require courts first to picture the "ordinary case" embodied by a felony, and then decide if construing 18 U.S.C. § 16(b). United States v. Avila, 770 F.3d 1100, 1107(4th Cir2014). The Fourth Circuit stated:

[E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as crime of violence. It is sufficient if the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.' James, 550 U.S.at 208, 127 S.Ct 1586. As long as offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. 16(b).Id.

Avila controls here because § 16(b) and § 924(c)(3)(B) are identical. Indeed, in litigating Johnson, the government, through the Solicitor General, agreed that the phrases at  issue in Johnson and here pose the same problem. In noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated: Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by examining the elements using a

categorical approach. See, e.g., United States v. Butler, 496 Fed.Appx. 158,161n.4 (3d Cir. 2012);Evans v. Zych, 644 F.3d 447,453(6th Cir.2011);United States v. Green, 521 F.3d 929,932 (8th Cir.2008);United States v. Acosta, 470 F.3d 132,134(2d Cir.2006). ). United States v. Amparo, 68 F.3d 1222,1225(9th Cir.1995). Courts may not consider the factual means of committing any given offense, but must consider the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B) or § 16(b) is at issue. Other courts likewise require the ordinary case analysis when the statutory language of 16(b) and thus § 924(c)(3)(B) is at issue. See, e.g., Keelan, 786 F.3d at 871(relied on by the government in its Rule 28(j) letter and following the "uniform rule" of all other circuits to have examined the issue" and adopting "ordinary case" analysis for § 16(b)); United States v. Ramos-Medina, 706 F.3d 932,938(9th Cir.2012)(citing James as the source of the "ordinary case" analysis required by 16(b)); Van Don Nguyen v. Holder, 571 F.3d 524,530 (6th Cir.2009)considering 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecution brought under the statute."); United States v. Sanchez-Garcia, 501 F.3d 1208,1213(10th Cir. 2007)(same). Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

Johnson v. United States, S.Ct.No.13-7120, Supplemental brief of respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23). The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the government to that concession.

Section 924(c)(3)(B), like the residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. Avila, 770 F.3d at

1107; Ayala, 601 F.3d at 267; Van Don Nguyen, 571 F.3d at 530; Sanchez-Garcia, 501 F.3d at 1213.

Since this is the identical analytical step that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in Johnson. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

## CONCLUSION

Since a carjacking under § 2119 categorically fails to qualify as a "crime of violence" under § 924(c)'s "force" clause, and § 924(c)'s residual clause is unconstitutionally vague, no legal basis exists for a § 924(c) conviction.

For the foregoing reasons, petitioner Joseph respectfully request that the court grant this motion and dismiss count 9 of the superseding indictment.

# Certificate Of Service

I certify that on __4·22·2016__, I forward this motion to the U.S. attorney office.  Address to John F. Murphy.

Respectfully Submitted
Sidney Joseph
27429-034
United States Penitentiary
P.O.Box 2099
Pollock, La 71467

Mr. Sidney Joseph #27429·034
U.S.P. Pollock
P.O.B. 2099
Pollock, LA 71467

"legal"
"Mail"

Eastern District
Hale Boggs Federal Building
U.S. Court House
500 Poydras St. Room C-151
New Orleans, LA 70130

FOREVER USA

USPS
LA 710

5 Stamp